## COMMONWEALTH *v.* LEWIS FASSITT.

[Charged on oath of David H. Carr, with the unlawful killing of John
D. Dwight, which said killing was a murder, in the state of Connec-
ticut, from which state he is a fugitive from justice.]

THE prisoner was arrested on a warrant issued on the
oath of D. H. Carr, an officer from New Haven, Con-
necticut, charging him with the murder of J. D. Dwight,
&c.

The hearing took place on the 13th October, 1842.

The facts as presented on the hearing, are: That
officer Carr testified that an oath was made before a justice
of the peace in New Haven, on which oath the said
justice issued a warrant for the arrest of Fassitt, and
gave the same to witness to execute. He made search
and made return to the warrant, "Not found." That
president Day, president of Yale college in New
Haven, made an affidavit in the presence of witness,
which said affidavit was the ground of an application
to the governor of the state of Connecticut, for a requi-
sition on the governor of Pennsylvania for the delivery
of the said Fassitt, who was then believed to be in Penn-
sylvania, as a fugitive from justice from the said state
of Connecticut, for the crime of murder. That witness
despatched a messenger to the governor of Connecticut
for the requisition, while he set out for this city to effect
the arrest of the fugitive, and that the requisition and
all the necessary and duly authenticated papers in sup-
port of the charge, would come on in forty-eight hours.

Officer Whisner testified, that in making the arrest, some conversation took place between him and the prisoner, and that he asked witness if he, witness, was from New Haven. On being informed he was not, but that a person was here from that place, prisoner inquired " if any thing had happened to Mr. Dwight."

These being the only witnesses at the first hearing, and all the testimony at that time within reach, the prisoner's counsel moved for his discharge, on the grounds that,

1. The requisitions prescribed by the act of congress, in such cases made and provided, were not complied with. That as no requisition from the governor of Connecticut, had been made on the governor of Pennsylvania, for the surrender of the prisoner, he could not be legally held; and,

2. There was no legal evidence of the commission of any crime by the prisoner, here or elsewhere.

The Attorney-general of Pennsylvania objected to the discharge.

The RECORDER remarked in substance, that the prisoner was arrested on the oath of an unimpeached witness, one who knew officially of the crime with which the prisoner was charged. That he had been required to execute a warrant for his arrest, and had not found the prisoner in his bailiwick. That he had seen an affidavit made and sworn to, in which an application was made for a requisition. That he had despatched an officer for the requisition, and that it was expected to arrive here in a short time. It is not necessary in order to arrest a fugitive, for such requisition to be produced at the time

of the arrest, if the oath on which the warrant issues, is sufficient to raise a good reason for believing the party charged has committed a crime in a sister state. The oath is itself sufficient to justify an arrest in all cases; but in cases where the highest crimes are charged, it is not the discretion, but the duty of the magistrate, which should govern his action.

The objects of the Attorney-general and the prisoner's counsel are the same. Neither desire the surrender of a citizen of this state, into the hands of the officers of another state, until all the forms prescribed by the act of congress are complied with. There is a vast difference, however, between a holding for a farther hearing, at which time the legal requisition will be made to appear, in due form, and a surrender of the prisoner without it.

If the prisoner's counsel were objecting to the surrender, under the act of congress, their objection would be sustained; but it is not the wish of the Attorney-general, nor is it my intention, at this stage of the case, to surrender the prisoner into the hands of the officer, to be carried by him to the place where the crime is said to have been committed. It seems to me clear, that my duty is, to hold the prisoner till the legal steps be taken for demanding the surrender. The evidence in this case is sufficiently strong to justify a holding, even if the crime had been committed here. It is the highest order of testimony now to be had, and it would indeed be strange in criminal proceedings, that a party charged with the highest crime or any crime, must be discharged at the moment of the arrest, because at that period in the proceedings, there is not evidence enough

to convict, when still stronger evidence is in existence, but inaccessible at the instant. In cases of fugitives from justice from other states, the ability to obtain all the testimony at the time of the arrest, is almost impossible, and consequently the necessity of holding for a farther hearing, until such witnesses are produced, is most markly manifest.

The act of congress impliedly recognises the arrest of fugitives before a requisition is made. The provisions of the act refer only to such cases, in which the arrest is made after a requisition of one executive on the other, and by virtue of the same.

The section of the act of congress, passed February 12th, 1793, respecting "fugitives from justice," is in these words:

§ 1. "Be it enacted, &c., That whenever the executive authority of any state in the union, or of either of the territories north-west or south of the river Ohio, shall demand any person as a fugitive from justice of the executive authority of any such state or territory to which such person shall have fled, and shall moreover produce the copy of an indictment found, or an affidavit made before a magistrate of any state or territory as aforesaid, charging the person so demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged fled, it shall be the duty of the executive authority of the state or territory to which such person shall have fled, to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such

authority appointed to receive the fugitive, and cause the fugitive to be delivered to such agent when he shall appear: But if no such agent shall appear within six months from the time of the arrest, the prisoner may be discharged. And all costs or expenses incurred in the apprehension, securing and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory."

The proceedings required to be complied with in this section, are predicated of the fact, that the executive authority of one state has demanded the fugitive from the executive authority of the state into which such fugitive shall have fled, and is then and there sojourning. That in such case, the forms prescribed by the act of congress must govern the proceedings, admits of no doubt. But the act does not prohibit an arrest of a fugitive under any other circumstances; the law is directory, but not prohibitory.

Congress never intended to pass a law for the furtherance of the ends of justice, which if construed as the prisoner's counsel construe it now, would prevent the arrest, of any fugitive from a community, the laws of which he had violated.

If a person, after having committed a high crime, such as murder or arson, in New York city, should take his way across the river to New Jersey, he would be there safe, till sufficient time should elapse for a requisition to arrive from Albany at Trenton, and then, to the place of the refuge of such fugitive. And even should the officers of justice seek to detain him, until such demand of the executive authority should, in due form, be made on the

other, they would be prevented under the construction put upon this act by the prisoner's counsel.

And again, to show the difficulty of arresting such fugitive. Suppose a few hours before the arrival of the state agent, with the executive authority to arrest, the fugitive should, in the very presence of the officers of the state, take his way into another neighbouring state, he would there be safe till the whole proceedings were re-enacted, and so on till such fugitive would be in fact beyond the reach of the law.

Such are the easy and expeditious modes of passing from state to state, that dangerous delay would ensue, before a felon could be arrested, and not before, even then, a demand had been made on perhaps every state executive in the union.

I cannot believe such was the intention of congress.

The provisions of the act of 1793, apply only to the *surrender* of a citizen of one state, into the hands of the violated law of another state, for trial; and being directory on that point, it does not, nor never intended, to prohibit an arrest of such offender by the authority of the state into which he had fled, to await the executive demand of his own, for his surrender for trial.

There is no state or national authority compelling an arrest before an executive demand; but the courtesy due by one state to another, and the long and universal custom regulating arrests in such cases, has made it a right and a duty at common law, thus to aid the states of the union to sustain and carry out their own laws, for their own safety.

As regards the second point, raised by the prisoner's counsel, the law is equally clear.

The warrant issued upon an oath, charging a well defined crime. It matters not where the crime was committed, if it is charged on oath to have been done; the complainant being within the jurisdiction of the officer who issues the process for the arrest of the offender.

Independent of a common law right, the custom which has sanctioned the arrest of fugitives from the justice of other states, to await a demand of the executive authority of such state for his surrender for trial, has established the right, and made it one at common law. A custom among the states of this union, which are independent sovereignties, has so far as the states are concerned, all the force of common law, as among them, to the extent which a custom, is regarded in the light of a common law principle.*

It would be a subversion of the ends of justice, to permit a person charged on oath with having committed a crime in another state, to remain, unmolested, till an executive demand were made on the authority of the state into which he had fled, before his primary arrest. In most cases, it is the only moment at which such fugitive could be secured at all, when he is found immediately following the commission of the crime. A few hours would be sufficient to put him beyond apprehension. True, he has rights—true, he is presumed innocent till he is convicted—but among his rights, surely it is not contended, that his right to evade the law and escape, is the most prominent. There is a vast difference between arresting such a person and holding him

---

* The courtesy as between states, in regard to discharges under the insolvent laws of those states, may be cited in support of this principle.

till time is afforded for the production of the executive demand, and the surrender, before such demand be legally made.

The law is laid down on the subject of arrests, in the jurisdiction where the crime was committed, as follows:

It has been held that the felon, who is seen to commit murder or robbery, must be arrested on the spot, or suffered to escape. So, although not seen, yet if known to have committed a felony, and *pursued* with or without warrant, he may be arrested by any person. And even where there is only probable cause of suspicion, a private person may, without warrant, *at his peril,* make an arrest; for nothing short of proving the felony will justify the arrest; 7 Smith Laws 727.

In every case of treason, felony, and actual breach of the peace, the offender may be apprehended without warrant, if such crime has been committed by some one, and there is reasonable ground to suspect an individual guilty. Same.

This is the law in Pennsylvania—this the rule in cases where the act or crime, has been committed in the jurisdiction proper, and the witnesses required to sustain the charge, are within immediate operation of process, to enforce their prompt attendance to testify.

If such be the law in cases referred to, is it not equally, if not more obligatory, in cases where the crime was committed elsewhere, and other testimony to support probable cause is in other states? And is it not to be fairly inferred, that in this latter class of cases, the rights of the sister states, and her citizens, should be as carefully guarded as the rights of the accused? It

4

is not uncommon, when persons are charged with of-
fences, to regard their rights as requiring the whole
attention of the legal tribunals, and losing sight of the
fact, that the rights of those who charge the offender
with his crime, are equally the object of judicial guar-
dianship.

So much for the arrest of the prisoner, and the prin-
ciples of law applicable thereto.

The next inquiry is, whether the testimony before us
is sufficient to warrant the detention of the prisoner for
a farther hearing, in order to give reasonable time for
the production of such testimony, as will require his
farther detention to await a requisition of the governor of
Connecticut, or the production of the requisition itself.

The evidence of officer Carr is clear, and his veracity
is not questioned. He says, that as an officer, he was
charged with the service of a warrant from the proper
officer in New Haven, the exigency of which was the
arrest of Fassitt, for the crime charged; that he did not
find him in his jurisdiction; that he saw president Day*
sign and swear to an affidavit setting forth the fact, on
which an application was made to the governor of Con-
necticut for a requisition; that he, Carr, sent an officer
in the cars to the residence of the governor, for the re-
quisition, and that he came to Philadelphia to effect the
arrest. This testimony is sufficient, in my opinion, to
justify a holding for a farther hearing.

This charge is murder, a felonious killing, as shown
by the testimony. We must so regard it. The proper

* The president of the college, in which the deceased was a tutor
and the prisoner a pupil.

tribunal of the state where the crime was committed, alone can determine what is its grade or degree, according to its own laws. In Pennsylvania, it would be murder, and a jury must determine whether such killing, is murder of the first or second degree, or manslaughter.

By the laws of Pennsylvania, I could not bail on a final hearing, much less at this first step in the investigation of the case.

This question has however been determined, so far as a decision of the court of common pleas of this county can determine it. In the case of the Commonwealth v. The Keeper of the Prison, 2 Ashmead 233, the court say, " Where the crime charged is short of a felony, the judges are bound to admit to bail ; but where a capital felony is charged, and the proof is evident, or the presumption great, no power exists any where to allow it."

The testimony before me certainly proves the presumption to be great, that Fassitt killed Dwight. A great presumption is lesser in degree than probable cause, for the latter is "good reason to believe" the party guilty. I cannot, therefore, take bail at this time, in this stage of the case.

Gladly would I say, were it in my power, to this young man, " Depart in peace." Under all the circumstances of his case, the performance of a duty which I conceive both law and duty every way enjoins, is a delicate and painful act, but my feelings must yield to the equal administration of the laws of the land.

The prisoner is committed till Tuesday morning next, at 10 o'clock, for a farther hearing, and the production

of the requisition from the governor of Connecticut on the governor of this state.

NOTE.—It seems proper, here to remark, that on the day on which the prisoner was committed, pursuant to the order made by the Recorder, a writ of habeas corpus was issued directed to the officer, and served upon him, while conveying the party accused to the county jail. The writ was returned immediately, no notice was given to the magistrate, and the accused was discharged on bail the same day. The bail asked was, it is believed, five or six thousand dollars, and the condition of the recognizance was it is farther believed, that the accused should appear before the court, at a day fixed. The power or authority for this action in this case, does not appear in any law of this state. Where a judge or court find authority for taking bail in such cases, is a question of some importance. If the evidence before the judge was sufficient to hold the accused to bail under any circumstances, it was sufficient to show the accused had committed a crime in another state, and he was therefore " a fugitive from justice." If then he was bailed being a fu-gitive from justice, such admitting to bail was in direct opposition to our law. It was a violation of the 5th section of the habeas corpus act of the 18th February, 1785, which is in the following words :

" Provided always that nothing in this act shall extend to discharge out of prison, any person guilty of or charged with treason, felony, or other high misdemeanor, in any other state, and who by the confede-ration ought to be delivered up to the executive authority of such state, nor any person guilty of or charged with a breach or violation of the law of nations."

The accused *was charged with the killing* of one Dwight, which was certainly a high misdemeanor, and he *ought* by the act of congress passed February 12th, 1793, in compliance with its spirit and letter, to be delivered up.

The words of the statute " to discharge out of prison," cannot surely mean, the walls of the jail, but refer to any and all legal custody.